Paramount Paper Products Company, Inc., Appellant, v. Lynch.

Argued September 28, 1956. Before RHODES, P. J., WRIGHT, WOODSIDE, ERVIN, and CARR, JJ. (HIRT and GUNTHER, JJ., absent).

*William L. West,* with him *William L. Matz,* and *Zoob & Matz,* for appellant.

*Otto W. Woltersdorf,* for appellee.

OPINION BY WOODSIDE, J., December 28, 1956:

This is an appeal from the refusal of the court below to enter judgment in favor of the plaintiff for $1234.80, and to grant it a new trial, after a verdict for the plaintiff in the sum of $306.24 with interest.

The plaintiff brought this action in assumpsit on a book account to recover the purchase price of 100,000 cellophane bags ordered by the defendant for use in merchandising mint candies sold by him to retail stores. He had been in business for a number of years, during which time he had used millions of a certain type of bags printed in blue ink. At the time the order was given to the plaintiff it was accompanied by a sample bag which was to be matched.

The bags which were delivered to the defendant in cartons, were first used in his business a few days later while he was in Columbus, Ohio. There was a dispute as to the number used; the plaintiff claiming 35,000, and the defendant admitting 18,000 to 20,000. When the plaintiff's wife called him on the telephone, he directed her to stop using the bags immediately. Upon his return to his place of business a few days later, he notified the plaintiff that the bags did not comply with the sample, were unsatisfactory, and that he desired to return the unused ones. Later the plaintiff sent to the defendant's place of business two of its employes who went over the cartons, marking them with such designations as, "O.K., light, high marks." "O.K. darkest." "N.G." "Darker, N.G." "O.K. light." The defendant testified that he "Couldn't use five shades of blue," and the plaintiff's president said "He couldn't duplicate the blue you want."

The case was tried in the Municipal Court of Philadelphia and the jury returned a verdict as follows:

"Jury finds for the defendant, Arthur A. Lynch, individually and trading as Devonshire Cream Mint Company, and against the plaintiff, Paramount Paper Products Co., Inc., and stipulates that the defendant pay for 25,000 bags, with interest on the same, and also return the unused portion of shipment of bags."

In a discussion with the trial judge and counsel, the foreman of the jury further stated "We thought that the defendant, Mr. Lynch, should pay for the bags that he had used, and that he didn't get what he wanted in the way of bags, the sample that he gave, so that he shouldn't have to pay for all these bags."

After some further discussion, and polling of the jury, the trial judge molded the verdict to be in favor of the plaintiff and against the defendant in the sum of $306.25 with interest from July 23, 1953, which represented the cost of 25,000 bags at the rate of $12.25 per thousand.

Subsequently the court refused plaintiff's motions for judgment n.o.v. for the full amount of its claim and for a new trial.

Appellant contends that the use of a substantial quantity of the goods without complaint constituted an acceptance of all of the goods, and entitles it to judgment of the entire amount claimed.

The transaction took place in the latter part of 1953. This was subsequent to the enactment of the Commercial Code, but prior to its effective date of July 1, 1954. This case is therefore governed by the Sales Act of May 19, 1915, P. L. 543. Under section 48 of that act (69 P.S. §258) "The buyer is deemed to have accepted the goods when he intimates to the seller that he has accepted them, or when the goods have been delivered to him, and he does any act in relation to them which is inconsistent with the owner-

ship of the seller, or when, after the lapse of a reasonable time, he retains the goods without intimating to the seller that he has rejected them."

The Commercial Code leaves no doubt that a purchaser can accept any commercial unit or units and reject the rest if the goods fail in any respect to conform to the contract: Act of April 6, 1953, P. L. 3, §2-601; 12 A. P.S. §2-601. Under the provisions of the Sales Act, however, there has been some doubt as to whether the use of any part of the goods constitutes an acceptance of all of them. *Ireland Brothers v. Refowich Brothers,* 90 Pa. Superior Ct. 221 (1926); *Tete Bros. v. Eshler,* 11 Pa. Superior Ct. 224 (1899); and *Whatley v. Weston, Dodson & Co., Inc.,* 289 Pa. 36, 136 A. 849 (1927), are cited by the plaintiff as supporting its contention that the use of a substantial number of the bags by the defendant constituted an acceptance of all of them. The *Tete Bros.* case was decided prior to the Sales Act of 1915, and the other two cases can be distinguished on their facts.

*Moskowitz v. Flock & Flock,* 112 Pa. Superior Ct. 518, 171 A. 400 (1934) and *Bennett v. Perlstein & Co.,* 124 Pa. Superior Ct. 65, 188 A. 97 (1936) are cited by the defendant as supporting his contention that the use of some of the bags under the circumstances of this case does not constitute an acceptance of all of them. The *Bennett* case held that defendant-retailer who had sold two dresses, which he thus could not return to the plaintiff-wholesaler, was not deprived of the right to rescind the contract upon the return of the remaining 22 dresses with an offer to pay for the two which he had sold. As suggested in the *Moskowitz* case, a precise rule cannot be laid down prescribing just what facts will warrant a partial rescission. A solution must depend upon the situation in each case.

Here the plaintiff's representatives acknowledged that part of the goods were "N.G." and part of them "O.K." There is evidence from which the jury could find that the defendant notified the plaintiff of his rejection of the bags as soon as he discovered that they were unsatisfactory. The jury's verdict established that the goods did not comply with the contract. Under these circumstances we think that the use of some of the bags by the defendant did not constitute an acceptance of all of them.

Furthermore, section 44 of the Sales Act of 1915, supra, 69 P.S. §254, paragraph 3, indicates that the buyer can reject some goods and accept others. It provides as follows: "Third. Where the seller delivers to the buyer the goods he contracted to sell, mixed with goods of a different description not included in the contract, the buyer may accept the goods which are in accordance with the contract and reject the rest, or he may reject the whole."

The appellant further contends that the court had no authority to mold the verdict and to permit the entry of the judgment in the amount of $306.24, and argues that if judgment n.o.v. is not entered in his favor then a new trial should be granted first because, he contends, the jury disregarded the court's instructions as to what the verdicts could be, secondly, because the court's failure to charge the jury that the use of a substantial amount of the goods without complaint was an acceptance of the goods, making the defendant liable for the entire purchase price, and third, because the jury ordered the defendant to return to the plaintiff the unused goods.

In its charge the trial judge stated, inter alia, as follows: "So, if you find a verdict for the plaintiff in the amount of his claim, you will be saying that the

plaintiff complied with his contract with the defendant. If you find a verdict for the defendant, you will be saying that the plaintiff did not comply with his contract. Those are the two possible verdicts in the case." In his opinion, however, the trial judge stated that he felt the verdict was proper and should be affirmed.

Over 100 years ago our Supreme Court stated in *Friedly v. Scheetz,* 9 S. & R. 155 (1822) : "strict form is not now required in verdicts; it is only to be understood what the intention was, agreeable to which the verdict may afterwards be molded into form . . . it may be put into form, and as the merits have been tried, justice must be obtained, without being entangled in technical niceties." Considering how much more frequently justice was "entangled in technical niceties" in 1822 than today, we can see what little merit there is in the objection to molding a verdict where the intent of the jury is clear. See *Parks v. Bishop,* 296 Pa. 91, 145 A. 718 (1929). Here the intent of the jury was clear and the molding of the verdict proper.

The second objection to the moulding of the verdict is based upon the same arguments as made on the motion for judgment n.o.v. which were disposed of above.

The defendant maintained throughout his offer to return the bags which he believes, and which the jury has found, did not conform to the contract. This is a situation different from that found in the case of *Glass v. Blair,* 4 Barr 196 (1846), cited by the plaintiff for support of his contention that the verdict could not stand because the plaintiff could not compel the return of the unused bags.

The case was carefully tried, and the jury arrived at what appears to be a fair solution of the controversy.

The jury found that the bags failed to conform to the contract, and that when the purchaser discovered this he promptly notified the plaintiff of this fact.

Judgment affirmed.