William E. MOORE, Plaintiff,

v.

DOUGLAS AIRCRAFT CO., Inc., a corporation of the State of Delaware, Defendant.

Superior Court of Delaware,
New Castle.

Sept. 20, 1971.

**626**

Jacob Balick, Joseph S. Yucht, of Balick & Yucht, Wilmington, for plaintiff.

William Prickett, Jr., of Prickett, Ward, Burt & Sanders, Wilmington, for the defendant.

OPINION

WRIGHT, Judge.

This is an action for damages arising from injuries sustained by the plaintiff when a yoke and sling apparatus holding an aircraft engine broke, allowing the engine to fall. Plaintiff was a mechanic employed by Capitol Airways, Inc., at the Greater Wilmington Airport in New Castle, Delaware. At the time of the accident, which occurred on May 10, 1964, plaintiff and three fellow employees were installing the engine on an airplane. The defendant had manufactured the yoke and sling and had sold them to Capitol some eight months prior to the accident. Plaintiff bases his cause of action on the alternate theories of breach of warranty, negligence and strict liability. Defendant now moves for summary judgment urging that plaintiff cannot recover under any of these three theories.

As to the breach of warranty issue, both parties agree that 5A Del.C. § 2–318, which extends warranties to parties who may reasonably be expected to use, consume or be affected by goods, is inapplicable here because the accident occurred prior to the effective date of that provision. See 5A Del.C. § 10–101.

Defendant argues that at the time of the accident Delaware law required privity between parties to a suit in order for a breach of warranty action to lie. Defendant concludes that since plaintiff did not purchase the allegedly defective goods from Douglas, he cannot be in privity with Douglas and therefore he cannot maintain an action for breach of warranty. Plaintiff replies that he should be considered as being in privity with Douglas because he was the ultimate user of the product as a member of the concern which stands in privity with Douglas in the strict sense. He urges that because he is part of the industrial family of the employer he is therefore entitled to the benefit of whatever warranty runs between the manufac-

turer Douglas and the purchaser Capitol. Plaintiff cites Peterson v. Lamb Rubber Co., 54 Cal.2d 339, 5 Cal.Rptr. 863, 353 P.2d 575 (1963) in support of his view. There an employee of a corporation was allowed to maintain an action for breach of warranty against the manufacturer of a grinding wheel which had been purchased by the corporation. The California Supreme Court held that even though the employee was not the purchaser of the wheel, he had the "successive right to the possession and use of the wheel" and was therefore by that definition in privity with the manufacturer. The reasoning of that opinion is well considered. However, any speculation as to what Delaware law should be on this point is foreclosed by the opinion of our Supreme Court in Ciociola v. Delaware Coca-Cola Bottling Co., 3 Storey 477, 172 A.2d 252 (1961). There the daughter of a store owner was injured when a soft drink bottle broke in her hand. The court refused to extend the scope of those in privity with the seller to include the plaintiff daughter. The reasons for finding that plaintiff in privity with the seller were certainly as compelling as those which face the Court here in deciding whether Mr. Moore should be said to be in privity with Douglas. However, the Court in *Ciociola* refused to do so, deferring to the state legislature to change the Common Law Rule. Ciociola v. Delaware Coca-Cola Bottling Co., *supra*, 172 A.2d 252 at 257. Therefore, in accordance with the principles stated in Ciociola v. Delaware Coca-Cola Bottling Co., *supra*, I find that the plaintiff here was not in privity with defendant and cannot therefore maintain an action for breach of warranty.

Douglas also contends that plaintiff cannot recover on a theory of strict liability. In reply, plaintiff points out the case of Kates v. Pepsi Cola Bottling Co., 263 A.2d 308 (Del.Super.Ct.1970) where the Court, citing Restatement (Second) of Torts § 402A (1965), states that "strict liability is recognized regardless of lack of privity as a basis for holding original sellers responsible for damages caused by a product in a defective condition unreasonably dangerous to the user or consumer." However, the Court in that case went on to find that the article in question, a cardboard soft drink carton, was not unreasonably dangerous, precluding the necessity for ruling on whether, in a proper case, strict liability is or should be the law in Delaware. Plaintiff does not cite, and I have not found, any other Delaware case which favorably cites the Restatement view on strict liability.

One cannot study the products liability area without realizing the dilemma of our nation's legislators and judges over the best approach to take in allocating risks among the elements of the chain beginning with a manufacturer's subcontractor and ending with an injured party who may be using or even observing the use of a defective product. The most often discussed theories are those relied on here by the plaintiff: strict liability, negligence, and breach of express or implied warranty. Each of these has evolved as a much needed way of avoiding the harsh effects of a strict privity requirement as a prerequisite for a suit. Strict liability has become a popular remedy and is now available to plaintiffs in several neighboring states. As noted above, our legislature has chosen the approach of expanding the scope of privity. It is my opinion that under the liberalized privity rule, plaintiffs will be afforded a fair opportunity to recover for injuries caused by defective products, whether strict liability is ever recognized in Delaware as a theory of recovery or not. Consequently, I find no compelling reason to initiate recognition of another, similar remedy. Accordingly, I find that the theory of strict liability is not available to the plaintiff here.

Defendant also contends that plaintiff cannot assert his action in negligence in the absence of privity, citing from Gorman v. Murphy Diesel Co., 3 Terry 149, 29

A.2d 145 at 147 (Del.Super.Ct.1942) that "* * * a contractor, manufacturer or vendor is not liable to third parties who have no contractual relations with him for negligence in the construction, manufacture or sale of the articles he handles." However, a well recognized exception to the privity requirement exists where the product is one "known to the seller to be imminently dangerous to life and limb or likely to become so when put to its intended use if constructed defectively." Kates v. Pepsi Cola Bottling Co., *supra*, at 311, citing Gorman v. Murphy Diesel Co., *supra*, Hartford Accident and Indemnity Co. v. Anchor Hocking Glass Corp., 5 Terry 39, 55 A.2d 148 (Del.Super.Ct.1947), and Behringer v. William Gretz Brewing Co., 3 Storey 365, 169 A.2d 249 (Del.Super.Ct.1961). The question is whether the apparatus in question was imminently or inherently dangerous if negligently constructed.

The normal intended use of a yoke and sling such as the one sold by Douglas is to suspend aircraft engines during maintenance operations. If such a device is negligently constructed, it obviously threatens the safety of those relying upon it to hold up the engine. A failure of the yoke is likely to result in serious injury or death to those beneath or near it. The manufacturer of such a yoke must know that his product can be a dangerous instrumentality if negligently constructed. To think otherwise would be to ignore the obvious. See the similar situation in Robinson v. Nightingale, 188 Kan. 377, 362 P.2d 432 (1961).

▮ Defendant urges that, because the break in the apparatus did not occur until several months after its construction, the yoke was not imminently dangerous. However, this fact goes to the question of whether there was in fact some negligence in the construction of the device, and not to whether such a device is imminently or inherently dangerous if negligently constructed. Plaintiff may rely on a theory of negligence.

Defendant's final contention is that plaintiff cannot rely on the doctrine of *res ipsa loquitur* as a theory on which to base his cause of action sounding in negligence. The Delaware courts have discussed the theory often, and from the cases certain principles may be distilled as controlling any determination of whether the theory applies.

▮▮ The theory is a rule of circumstantial evidence which calls upon the defendant to produce evidence showing that the incident in question was not due to his negligence. A defendant is put to this proof if the plaintiff is able to show that the accident probably would not have occurred in the absence of negligence. Skipper v. Royal Crown Bottling Co., 192 A.2d 910 (Del.1963). Although it is not a requirement of the theory that the defendant have had exclusive control of the instrument at the time of the accident, Ciociola v. Delaware Coca-Cola Bottling Co., *supra*, 172 A.2d 252 at 259, it is elementary that the item must have been in defendant's control at that time or sometime previous to the accident.

In determining whether the facts here allow application of the rule of *res ipsa loquitur*, I must of course accept that version of the facts most favorable to the plaintiff. Accordingly, it is assumed that the yoke failed when a weld at one of its joints came apart, as alleged by the plaintiff. As noted above, the yoke was presumably designed to hold heavy machinery, and as such one would not be unreasonable in expecting it to withstand great stress. It is certainly unusual for such an apparatus to fail. In the light of practical human knowledge and experience, a reasonable trier of fact could conclude that the unexplained separation of the yoke was prob-

ably due to defendant's negligence in assembling it. See Robinson v. Nightingale, *supra*.

Douglas argues that in the intervening eight months between the time the apparatus was purchased by Capitol Airways, Inc. and the time of the accident, the yoke and sling could have subjected it to abuses which would have weakened the structure. It is defendant's position that since there are such alternate explanations for the accident, it is not more probable that the break occurred due to defendant's negligence than it is that the break did not so occur. These matters however are matters of defense once the plaintiff has produced sufficient evidence to require such a defense and as I have noted above there do appear at this stage of the proceeding sufficient facts available to the plaintiff to require the defendant to defend against an inference of negligence.

■ At the trial, Douglas may offer proof of misuse of the yoke and sling, if that proof is available, and of the age of the apparatus, as part of the circumstances tending to show that Douglas was not negligent in constructing the machine. Since only the accident itself may be considered as the circumstances from which an inference of negligence may be drawn, Skipper v. Royal Crown Bottling Co., *supra* at 912, it is my conclusion that since the apparatus was manufactured by the defendant, and since on the facts before this Court it could be found that the failure of the apparatus was due to some negligence in its manufacture, the availability to the plaintiff of the theory of *res ipsa loquitur* is not precluded at this point as a matter of law.

It is held, therefore, that the plaintiff has standing to maintain a cause of action for negligence, and that he is entitled to rely on the theory of *res ipsa loquitur* in doing so. Accordingly, defendant's motion for summary judgment is denied.

Order accordingly.